| | |
|---|---|
| 1 | SCOTT N. SCHOOLS (SCBN 9990)<br>United States Attorney |
| 2 | |
| 3 | BRIAN J. STRETCH (CSBN 163937)<br>Chief, Criminal Division |
| 4 | SUSAN B. GRAY (CSBN 100374)<br>Assistant United States Attorney |
| 5 | |
| 6 | 450 Golden Gate Avenue, Box 36055<br>San Francisco, CA 94102<br>Telephone: (415) 436-7324 |
| 7 | Facsimile: (415) 436-6748<br>email: sgray2@usdoj.gov |
| 8 | |
| 9 | Attorneys for Plaintiff |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**SBA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. **C 07 5472** |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR FORFEITURE** |
| $28,567 IN UNITED STATES CURRENCY, 2003 GMC SIERRA 2500 HD PICKUP TRUCK VIN# 1GTHC24U43E100192, CALIFORNIA LICENSE #7P68138 | ) ) ) ) ) |
| Defendants. | ) |

In this <u>in rem</u> forfeiture action, the United States alleges:

**JURISDICTION**

1. This Court has jurisdiction under Title 28, United States Code, Sections 1345 and 1355 and Title 21, United States Code, Section 881.

**PARTIES**

2. Plaintiff is the United States of America.

3. The in rem defendants are described as follows:

    a. $28,567.00 in United States currency; and

    b. one 2003 GMC Sierra 2500 HD Pickup Truck, VIN # 1GTHC24U43E100192, California license # 7P68138.

1   The defendants are currently in the custody of the United States Marshals Service in the
2   Northern District of California. Both defendants were seized during the arrest of John Gomes
3   Melo and the execution of a search warrant at his residence on May 16, 2007.

4.  There is probable cause to believe that the in rem defendant funds constitute proceeds of drug trafficking and/or were used to facilitate the sale and distribution of controlled substances and are thus subject to forfeiture, pursuant to Title 21, United States Code, Section 881(a)((6). There is also probable cause to believe that the in rem defendant vehicle was used or intended for use to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of a controlled substance and is thus subject to forfeiture, pursuant to Title 21, United States, Code, Section 881(a)(4).

**VENUE**

5.  Venue lies in the Northern District of California, pursuant to Title 28, United States Code §§ 1355(b) and 1395, as acts giving rise to this in rem action occurred in this district and the defendant funds are located in this district.

**INTRADISTRICT ASSIGNMENT**

6.  This matter arises in Sonoma County because a substantial part of the events which give rise to the plaintiff's claims occurred in that county. Assignment in San Francisco is proper.

**FACTS**

7.  Plaintiff incorporates by reference the allegations of paragraphs one through six as though fully set forth herein.

8.  On March 13, 2007, the Honorable Robert Boyd of the Superior Court of Sonoma County, authorized a State of California interception of wire communications ("wiretap") on telephones used by John Gomes Melo (hereinafter "Melo"). On April 20, 2007, Judge Boyd re-authorized the electronic wiretap and added two additional phones known to be used by Melo.

9.  During the next approximately two months, up to and including May 16, 2007, Special Agents ("S/A") from the DEA and detectives from the Sonoma County Narcotics Task Force (SCNTF) monitored telephones known to be used by Melo pursuant to the duly authorized

COMPLAINT FOR FORFEITURE                                                                 2

wiretap. Through information gathered during the wiretap, the agents identified a long-standing narcotics relationship between Melo and Arturo Cuevas ("Cuevas"). The agents learned that Melo and Cuevas communicated their narcotics and financial transactions by coded communications. As part of that coded language, Melo and Cuevas used the terms "Gonzales" and "Jose" to refer to cocaine and methamphetamine.

10. On May 4, 2007, Cuevas telephoned Melo and asked for narcotics from Melo. Melo was selling narcotics to Cuevas, who was normally Melo's source of supply, because Cuevas had run out of his supply.

11. On May 8, 2007, Cuevas telephoned Melo. Melo and Cuevas discussed money and drugs. Melo asked if "Gonzales" was available. Cuevas said yes, but it was too expensive. Cuevas said the "cleaning lady" was 19, but he had another one available for 12.5. Melo said the last time he got "premium" for 12.5. Melo asked Cuevas if he could get premium again for 12.5. Cuevas said "no way." Melo told Cuevas 19 was too expensive and asked Cuevas for a sample of the other. Cuevas said he could do it Friday.

12. On May 14, 2007, Cuevas telephoned Melo and they again negotiated about the price of drugs. Cuevas referred to a product as being too expensive. Cuevas said he tried "the best . . . and the person had one for sure but the person wanted "12 1/2 . . . it's not super . . . it's not even weak, it's OK . . . it's not premium." Cuevas and Melo continued to discuss drugs, in code, and Cuevas asked Melo what he should do if Cuevas did not like it. Melo told Cuevas to call him about it.

13. On May 15, 2007, at approximately 1:04 p.m., Cuevas telephoned Melo and told Melo the "product" was hard to get. Melo asked "both?" Cuevas confirmed and said he had news for Melo. Melo asked "for Jose or Gonzalez"? Cuevas said "Gonzalez, but then asked Melo "What is more important, Jose or Gonzalez?" Melo replied "Gonzalez," but he needed "Jose" by tomorrow. Cuevas said he saw "Gonzalez" and it looked good. Cuevas said the price is "thirteen-fifty,"; it was going to be "fourteen" but Cuevas wanted to make "fifty cents." Cuevas and Melo continued to argue about the price and Melo said he only had "12". Melo asked Cuevas if "Jose" wants to work tomorrow. Cuevas said he would have "Jose" tomorrow.

COMPLAINT FOR FORFEITURE                                                                 3

14. On May 15, 2007, at approximately 3:41 p.m. Cuevas telephoned Melo and the two discussed the drug deal. Cuevas asked if Melo could do "12-3". Melo replied "12" was the most he could do. They continued to discuss drug price and quality in code. Cuevas and Melo agreed to meet at Melo's business the next day to complete the deal.

15. On May 16, 2007, at approximately 7:47 a.m. S/A Mark Macanga established surveillance near North Coast Home Loans ("NCHL"), Melo's buisness. At approximately 9:28 a.m. S/A Macanga observed Melo arrive at the rear door of NCHL. Moments later S/A Macanga observed Melo walk inside the business.

16. On May 16, 2007, at approximately 9:33 a.m. Cuevas telephoned and left a message on Melo's telephone telling Melo he wanted to bring "Gonzales" first because his friend would not let him bring the other one.

17. On May 16, 2007, at approximately 10:53 a.m., S/A Macanga observed Melo get into a 2003 GMC pickup truck, California license #7P68138, Vin #1GTHC2U43100192 ("GMC pickup truck") and drive away from NCHL. Moments later S/A Macanga observed Melo return to the business and walk inside. He came outside a few moments later carrying what appeared to be a postal box. Melo got back into the GMC pickup truck and drove away again.

18. On May 16, 2007 at approximately 11:21 a.m., Cuevas telephoned Melo and told Melo he was "there." Melo told Cuevas to park behind his car and he would be there in five minutes.

19. On May 16, 2007, at approximately 11:38 a.m., S/A Macanga observed both Melo and Cuevas' vehicles at 65 August Circle. Agents had previously identified 65 Augusta Circle as Melo's residence.

20. On May 16, 2007, at approximately 11:50 a.m. S/A Joshua Craven and S/A Mark Macanga, along with other members of the DEA, detectives from the Sonoma County Narcotics Task Force ("SCNTF") and the Petaluma Police Department approached 65 August Circle through the open garage and around the back side of the residence. S/A Craven knocked on the door to the residence inside the garage and announced the presence of law enforcement. At approximately the same time, other agents stationed outside the house observed Melo and Cuevas leaving the rear of

the house. Upon seeing the law enforcement personnel, Cuevas ran back into the residence carrying a shoe box (later found to contain approximately $14,000 in United States currency). Agents went into the house through the unlocked garage door.

21. Agents detained Melo on the rear lawn of his house and detained Cuevas with the shoe box full of United States Currency on the first floor of Melo's house. During a search incident to Melo's arrest, agents found approximately $4,267.00 of the defendant funds in Melo's right front pants pocket.

22. After agents secured the residence S/A Craven explained to Melo that a search warrant was being prepared based on probable cause there were drugs in the residence. S/A Craven asked Melo if he wished to identify where the narcotics were concealed and Melo agreed.

23. Melo lead agents to the garage of the residence and pointed to where approximately one kilogram of cocaine and approximately one pound of crystal methamphetamine had been concealed. Agents later located an additional approximately one third of a kilogram of cocaine concealed in a boot inside the garage during the execution of the search warrant.

24. After being read his Miranda rights and waiving them, Melo agreed to answer questions. Melo said he and Cuevas agreed on May 15, 2007, that Melo would purchase one kilogram of cocaine and one pound of "speed" (crystal methamphetamine) from Cuevas the following day, May 16th. Melo stated he and Cuevas agreed upon a price of $19,000 for the cocaine and $12,000 for the crystal methamphetamine. Melo added that the United States Currency in the shoe box was money for the purchase. Melo said he had concealed the narcotics he received from Cuevas in the garage and paid Cuevas the money which was later found in the shoe box.

25. Melo stated the transaction was a one time thing and it was not something he normally did. Later in the interview, he admitted that he had known Cuevas for approximately five years and that he had been buying kilogram quantities of cocaine from Cuevas on a monthly basis. Melo told the agents that he placed the cocaine and methamphetamine he received from Cuevas in the garage. Melo said he had given a portion of the buy monies to Cuevas, who counted the money and placed it in a shoe box. Melo said the remaining money for the narcotics transaction was still

1  located in the office area of Melo's residence. Melo reported that he had intended to give Cuevas
2  the remaining money, but he was arrested before he could finish payment.

3      26.    When asked where he had obtained the money to pay for the cocaine and
4  methamphetamine, Melo said he made the money from earlier narcotics sales. Melo stated he was
5  making approximately $2,000.00 to $3,000.00 per month selling narcotics.

6      27.    Melo told the agents that he has been shipping five ounce quantities of cocaine to
7  Alaska to a person named "Bill" every month for approximately two years. He sells the cocaine to
8  Bill for approximately $1000.00 per ounce. He ships the cocaine to Bill using various shipping
9  companies, such as Federal Express, United Parcel Service and the United States Postal Service.

10     28.    Melo stated he has been selling narcotics on and off for approximately 10-15
11 years. He typically conceals the narcotics in his garage or behind the seat of his truck. Melo said
12 he bought the defendant truck (the GMC pickup truck) from Craig Anthony Allen, but never re-
13 registered it in his own name. Throughout the two month investigation agents observed Melo
14 driving the defendant GMC pickup truck to and from his place of work, throughout the Petaluma
15 area and parked in front of his house. During the execution of the search warrant agents found the
16 title to the defendant GMC pickup truck in the office of Melo's residence.

17     29.    On May 16, 2007, following Melo's arrest, agents searched Melo's residence and
18 the defendant 2003 GMC pickup truck pursuant to a duly authorized state search warrant. During
19 the course of the search agents found three wooden boxes with a Native American/Alaskan motif,
20 two of which contained defendant currency. $15,400.00 was found in the box located in the
21 office. A second empty box was found in the office. $8,900.00 was found in the box located in the
22 garage. The money found in both boxes was in rubber banded bundles in denominations of twenty,
23 fifty and one hundred dollar bills. The bundles of money were sealed within white envelopes with
24 various handwritten notations on them as follows: 5 @ 11, 2 @ 11, 4 @ 11 and 3 @ 11. Based
25 upon their training and experience the agents knew the packaging and denominations of the money
26 was consistent with currency used for, or from, the sale of illegal controlled substances.

27     30.    During the execution of the search warrant, agents found $2,700 behind the
28 driver's seat of the defendant GMC pickup truck. They also found a Foodsaver model V365

COMPLAINT FOR FORFEITURE     6

sealing appliance and Foodsaver brand sealing bags located in a black gift bag in the vehicle. Based upon their training and experience the agents knew that the Foodsaver sealing appliance and bags are commonly associated with the storage and sales of narcotics.

### FIRST CLAIM FOR RELIEF
### 21 U.S.C. § 881(a)(6)

31. Plaintiff incorporates by reference the allegations of paragraphs one through 30 as though fully set forth.

32. Title 21, United States Code, Section 881(a)(6) provides, in part, for the forfeiture of all monies or other things of value furnished or intended to be furnished to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all monies used or intended to be used to facilitate the distribution and possession with the intent to distribute a controlled substance, including violations of Title 21, United States Code, Sections 841 and 846.

33. In light of the foregoing, and considering the totality of the circumstances, there is probable cause to believe that the defendant currency represents moneys furnished or intended to be furnished to another person in exchange for a controlled substance, constitutes proceeds derived from such an exchange, and was used or intended to be used to facilitate an offense, in violation of Title 21, United States Code, Sections 841(a) and 846, and thus subject to forfeiture under Title 21, United States Code, Section 881(a)(6).

### SECOND CLAIM FOR RELIEF
### 21 U.S.C. § 881(a)(4)

34. Plaintiff incorporates by reference the allegations of paragraphs one through 30 as though fully set forth.

35. Title 21, United States Code, Section 881(a)(4) provides for the forfeiture of all conveyances, including vehicles, used or intended for use to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of a controlled substance.

36. Based on the foregoing, and considering the totality of the circumstances, plaintiff alleges that the defendant conveyances are subject to forfeiture, pursuant to Title 21, United States

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that due process issue to enforce the forfeiture of the defendant property, that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed, that judgment of forfeiture be entered against said property, and that Plaintiff be awarded such relief as may be proper and just.

Dated: 10/25/07

Respectfully submitted,

STEPHANIE HINDS
Assistant United States Attorney

AUSA assigned S. Gray

1  STATE AND NORTHERN DISTRICT OF CALIFORNIA )
2  CITY AND COUNTY OF SAN FRANCISCO          )     **VERIFICATION**
3

4  I, Joshua Craven, state as follows:

5  1. I am a Special Agent for the Drug Enforcement Administration. I am familiar with
6  the facts in the investigation leading to the filing of this Complaint for Forfeiture.

7  2. I have read the Complaint for Forfeiture and based upon my participation in the
8  investigation, review of relevant investigative reports, review of documentary evidence, and
9  discussions with other persons involved in the investigation, I believe that the allegations
10 contained therein are true.

11 I declare under penalty of perjury that the foregoing is true and correct to the best of my
12 knowledge.

13

14 Executed this 25TH day of October, Windsor, California.

15

16

17                         Joshua Craven
                            Special Agent
18                          Drug Enforcement Administration

19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR FORFEITURE                                                           9